We are ready to proceed with the first case. I should also say, given the format that we're using today, we're going to try, sometimes we forget, but we'll try to give you three minutes at the start of your argument before we jump in with questions. Okay, good morning. With that, I think we're ready for the first case. GEICO v. Strut. Good morning. Thank you, Your Honor. May it please the Court, Robert Knorr representing the defendant appellates Dr. Strut, Dr. Hart, and Rez Physical Medicine and Rehabilitation Services. I'm joined in the room this morning by co-counsel Colin Knorr. I have asked to reserve two minutes for rebuttal. We ask the Court to consider the proper standard for the issuance of a preliminary injunction stating arbitration required under the New York No-Fault Law. Very specifically, we ask the Court to determine what constitutes irreparable harm and what is required to establish a serious question going to the merits. GEICO acknowledges that the mere cost in money, time, and resources spent in defending arbitrations in the no-fault system is insufficient to establish irreparable harm. They argue instead that irreparable harm is established on these facts due to the possibility of inconsistent verdicts between the proceedings in the no-fault system and the federal court. However, they fail to clarify what part of the judgments or verdicts would be inconsistent with Arbitrators in the no-fault system are asked to determine whether any challenged claim for treatment is appropriate and should be paid, a decision mainly based on whether the treatment was medically necessary and properly coded for payment. Although they have a right to, GEICO does not ask the no-fault arbitrators to determine whether any claim is fraudulent. In contrast, the federal case is based squarely on allegations of fraud. GEICO seeks to claw back payments already made, RICO damages, and a declaration that the doctor's practice is more than a fraudulent scheme. In support of the request for a pre-answer injunction, GEICO merely submitted its unverified complaint. Lengthy and intricate as it is, it is without evidentiary support. It is merely a compilation of conclusionary allegations. GEICO also submitted the affidavit of a claims adjuster who is not a medical expert or statistician. In opposition to the request for an injunction, the doctor submitted their own affidavit denying the claims of fraud, as well as the expert affidavit of a well-respected pain management specialist who reviewed GEICO's allegations, along with a random sampling of the materials that had been submitted to the arbitrators, and determined GEICO's claims of widespread fraud were unfounded. That expert evidence went unrebutted. It is the doctor's position that GEICO has failed to establish irreparable harm by failing to explain what verdicts would be question going to the merits based solely on an unverified complaint and a lay affidavit with little factual substance, and especially by not rebutting the expert opinion submitted in opposition. We're asking the court to reverse this termination of the district court below and vacate the stay so that this matter may proceed in the federal court as the GEICO's fraud claim while allowing individual claims for reimbursement to be processed within the system on a patient-by-patient, claim-by-claim basis as Newark state law requires. That is our argument, your honors, and I am prepared to answer any questions the court might have as to the matter or to go further into details on some of the sub-issues. Well, could you address more specifically why the risk of inconsistent decisions here is not irreparable injury? As I understand it, your clients are prosecuting 850 or so separate arbitrations, and presumably you could have inconsistent results from those arbitrations and the fraud allegations that GEICO is pursuing. So why isn't that a threat of irreparable injury? The action that GEICO brought in the federal court, the clawback action, will relieve them of any harm that any improper arbitration determination may have had. They have a remedy. Going back as far as fair price, and then again in this court's decision in Munn, it's been made very clear that the determinations in the arbitration system are not immune from a later case brought under... Mr. Norah, this is Judge Chan. One of the difficulties with that is that in the meantime, there may be arbitration awards made against GEICO, and these are arbitrators ruling without the benefit of looking at the evidence of patterns. And so then you have GEICO having to deal with these irreparable harm. I understand the ability to claw back, but it's in a hole because it would then have to undo, assuming it were possible, these adverse arbitration awards. The arbitration awards, Your Honor, are based on medical necessity and based on whether or not something is properly coded. GEICO, I have to take object to your premise that they cannot show patterns. They do have that opportunity in the no-fault system. They have the ability to verify these claims in a very robust way under the regulations. They can do examinations under oath. They can request documents. They can demand answers to questions. What happens is people unfortunately mistake... There would be no objection in these arbitrations to GEICO presenting the evidence of similarly worded claims in many, many cases, that kind of thing. I'm not aware... And how do you control whether... Because you can't control what the claimants are going to object to in these different arbitrations. No, that would be up to the arbitrators. I agree with that, Your Honor. But the problem we have this appeal on this record, GEICO's never tried. And yet they've come to the federal court asking for an extraordinary remedy of an injunction pre-answer without even giving an opportunity to find out whether the arbitrations would work. And I would say that in the case of the arbitrators making determinations, those determinations are subject to review by the federal court on the clawback. And therefore, the harm is not irreparable. And that is going back all the way to Jackson Dairy over 40 years ago. This court has been very consistent that the harm must be... The review is very limited. As you know, the review of an arbitration award is highly limited. Well, I think going back to MUN, which is this court's decision, it is not limited on a clawback argument like GEICO is making now. GEICO has every opportunity to come to federal court and say the claw this back. And that is their remedy. And that in and of itself establishes the harm is not irreparable. And I would like to add that the distinction in the arbitration system that is missed is that there are some cases that suggest the arbitration system is very narrow and you can't deal with fraud. Two things. One, you can't deal with undiscovered fraud. And that's what cases are talking about, is you can have these clawback proceedings because if you're not aware of the fraud, that timeframe in arbitration can be very difficult. But here, that's not the point. They're trying to prevent future arbitrations. They're trying to stop arbitrations from proceeding when they claim, if you accept the conclusion or a complaint that they've submitted, they claim they have a mountain of evidence showing fraud. They claim that they can prove that this whole thing is just a scheme. Well, if they have all that evidence... I just have one question about, there's a number of district court judges who found that there is irreparable harm in these cases. And I guess my question is, are they all wrong or are there case-specific factors that we should consider? Is it your position? There are two. I'm sorry, I was getting echoed. There are two things. One, you have to make a distinction between the early cases, which were dealing with the idea of a fraudulent incorporation, Elizonte and some of those cases. In that instance, it is a bright line. The provider is either eligible or not, period. There's no other question. If that issue of ineligibility is decided differently in the arbitrations from the federal court, that could be considered perhaps inconsistent. But that's not the case in many of them. But some of those cases didn't look deep enough into Elizonte. And then in addition, what happened was this echo chamber of these cases started to pile up. And I don't take anything away from the good judges in the district court, but I think when they saw a string site of seven other judges saying, oh, arbitration should be stayed, they figured, well, there must be something here, and therefore I'm going to lean that way. But the problem is, unless you dug into the facts of those cases and you found that really what they were saying was there is a specific issue, which is across the board on all of these arbitrations, which is the practice management question. That's not what we have in a lot of these later decisions. So I would say, with all respect, that they are wrong in the later decisions, but there is a distinction on the fact of these cases. And in our record on appeal, a very thin record for the extraordinary remedy of injunction, I would say they have not established the entitlement. Thank you, Mr. Knorr. We'll hear from the appellee. Thank you. Good morning. May it please the court. This is Max Gershinoff speaking, counsel for the GEICO appellees. I think that as a threshold matter, it's worthwhile to begin with the relevant standard. The standard that this court applies when reviewing a district court's decision to grant a preliminary injunction, as the court is aware, is an abuse of discretion. And it simply cannot be said in this court that Judge Sinatra, the district judge in this case, abused his discretion in deciding to issue the injunction. GEICO, under the facts of this case and under the overwhelming weight of district court authority from within this circuit, clearly established all of the required elements for the issuance of the injunction in this case. There's a reason why so many of the district courts have found that the risk of inconsistent decisions posed by a multitude of individual no-fault collections, arbitrations, and what's more, not just the risk of inconsistent decisions, but the risk that the arbitration decisions eventually may be rendered ineffective by the district court's ultimate judgment in the case. Satisfies the requirement for irreparable harm. In fact, the first case really to speak on the issue, or one of the earlier cases, rather, to speak on the issue, the Allstate v. El Zanotti case, cited to this court's decision in Merrill Lynch v. Optibase at 337 F. 3rd, 125, in finding that the risk of the inconsistent decisions and the risk that they might be rendered ineffective satisfied the irreparable harm requirement. This court has found in the past that irreparable harm may be found where an arbitration award ultimately would be rendered unenforceable by a federal decision. There have also been cases which have held that the time and resources expended in arbitration can constitute irreparable harm because they're not going to be recoverable. In this case, there's facts in the record which indicate that GEICO has to pay a significant amount of money in connection with these arbitrations, that GEICO bears the burden of those costs, and those costs would not be recoverable if the arbitrations eventually were All of these cases, Your Honors, were not wrongly decided. They were decided by district judges assessing the circumstances on the ground and coming to their conclusions about what was actually going on. And what was actually going on in those cases and in this case is that oftentimes these types of no-fault collection arbitration proceedings are used actually by a defendant to continue to enact the kinds of fraudulent schemes that we've and other insurance companies have alleged in other cases. They're part and parcel of the fraudulent schemes because the defendant health care providers know, as this court itself noted in the Allstate v. Munn case, that New York's no-fault arbitration system is an expedited affair in which really no discovery is permitted. Discovery, in this court's words, in the arbitration proceedings is limited or non-existent, as this court said in Munn. Could I ask if you could address the factual presentation you presented in the district court? I mean, the allegations in your complaint are very detailed, but your adversary says the complaint is not verified. As I read the affidavit as Mr. Weir, it doesn't seem to essentially assert that this is a plausible claim. So could you just marshal the factual presentation, the basis for establishing serious questions? Sure. Yes, Your Honor, absolutely. As a threshold matter, I would say that yes, the complaint is not, I suppose, verified, but it's signed pursuant to Rule 11. The facts in the complaint, this is not, for example, a 10-page complaint for breach of contract on which a court has predicated injunctive relief. As the court may note, this is an extremely detailed complaint that sets forth detailed, very credible, claim-specific examples of the defendant's unlawful and fraudulent conduct. It sets forth claim-specific examples of the defendant's, for example, practice of reporting that a massive, statistically impossible number of their Geico-insured patients supposedly presented with identical symptomatology to an extent that's just not credible. What's more, the examination results that the defendants reported in the substantial majority of the reports that they submitted for the substantial majority of their Geico-insured patients reported identical symptoms. The patients supposedly experienced identical symptoms to the extent where a massive number of examination reports for individual Geico-insured patients contained an identical typographical error in the reports of the symptomatology, indicating that it was just cut and pasted from one report to another, regardless of the uh, that a complaint like this one, this particular, you know, there may be some meritorious claims, uh, caught up in the, you know, the 850 arbitrations and, and, and they're getting swept up in this. Um, is that a factor? Is that not a possibility? Uh, we would respectfully submit your honor that in this case, no, we don't think that it's a possibility. We don't think that for example, a medical practice like RES can be partially fraudulent and partially lawful. In fact, we didn't see any of the claims that were submitted through RES that sort of fit the bill of being legitimate or even having, you know, facial legitimacy when viewed in the collective. And that's really one of the issues here, your honor, uh, you know, and in the contrary to the appellant's presentation, you know, and in an individual PIP arbitration, Geico has no real ability to, uh, for example, present to the arbitrator, uh, other claims from outside of the arbitration in which, for example, the appellants might've reported, uh, the same identical symptomatology for the patient. It's only when you review, when you review all of the defendant's appellant's billing and treatment reports in the collective. I mean, with respect, with respect to the issue of irreparable harm, um, you know, the, the, the other side, uh, the defendants argue that, uh, this can all be clawed back. Any adverse judgments can be clawed back. Um, and, and, and of course, usually, you know, money, uh, uh, loss of money is not irreparable harm. So how do you respond to that? Well, there's a, there's a number of different ways. First of all, even if, and we certainly do not concede this, that Geico were ultimately to uh, Geico has no clear path to recover. For example, the, uh, the costs, the, uh, the, the damages that it would incur in having to, uh, you know, pursue that clawback remedy. And in particular, you know, to vacate this multitude of arbitral awards and numerous district courts have found that that's sufficient to qualify as irreparable harm. And what's more, this court, uh, money too, at the end of the day, is it not? Well, this court has found that, you know, where there's no assurance that damages could reasonably be calculated or where the damages are difficult to establish and measure that, uh, that harm can be irreparable. Uh, you know, and it's not just money, it's time, it's resources. It's very difficult to quantify. And frankly, I would say that it's impossible to quantify, uh, what would have to go into trying to unwind, you know, that kind of number of arbitral awards. It's not even clear that that's kind of a, uh, you know, a damages award that could be issued to Geico or how it would be issued to Geico. And I think that's one of the reasons why this court, for example, in Merrill Lynch versus Optibase has found that, you know, where an arbitration award ultimately might not be enforceable, uh, you know, a, a party can be entitled to an injunction and joining the arbitration from proceeding. Uh, and we would say that certainly, you know, a factor in the case. Uh, here we have a situation where, uh, you know, we're faced with the prospect that we've got 850 arbitrations going on. Geico has no way, as this court recognized in Allstate versus MUN, to really kind of obtain or present discovery regarding a pattern that prevails across all of the defendant's claims in any of these individualized, no fault arbitrations. And therefore there's a clear present actual and imminent prospect, uh, given the very detailed, incredible allegations in our complaint and the many claims specific examples of the defendant's, you know, frankly, impossible billing when viewed in its collective, uh, that these arbitration awards ultimately might be, uh, rendered ineffective, uh, by a decision of the district court. And we would say that- This is Judge Park. Could I just ask you one more question about irreparable harm? I'm still having a hard time understanding why the risk of inconsistent judgments is irreparable, why that couldn't be remedied by money. Um, I understand there may be difficulty in calculating it or, you know, what you were saying before, but that seems to be the type of thing that happens, that courts do all the time. So what's irreparable about the risk of inconsistent judgment? Well, you have- If you have inconsistent decisions, Your Honor, where they're going to be ineffective or rendered ineffective, uh, you know, it's hard for- for me to see how that actually could be remedied, uh, in- in money damages. Again, you might, for example, be able to call- claw back, uh, you know, arguably, and I think this would be a very heavy, if not impossible, lift. Although you might ultimately be able to go in and get those, uh, arbitration decisions unwound and claw back the money eventually through some sort of Herculean effort, uh, I don't see any kind of path where GEICO could recover, uh, the time, the resources it would be forced to expend in connection with the actual unwinding of the arbitration award. Under New York's no-fault arbitration system, it's the insurance company that bears most of the costs of the arbitration, virtually all of the costs of the arbitration, not the healthcare provider. So, you know, against that backdrop, again, we- we- we come to that, uh, area where, uh, you know, there's no assurance that, uh, the damages involved- Difficulty, you know, uncertainty, um, significant expense, resources, time, and money are all the types of things that can be fixed with money. But your honor- I'm just having a hard time understanding your argument. Sure. Uh, you know, although, you know, although a- an injury may be potentially, possibly, there may be some theoretical ability for the injury to be remedied with money damages, uh, this court has not hesitated to find irreparable harm where there was no real assurance that the damages actually could be reasonably calculated at trial or where, uh, the damages, it was clear they would be difficult to establish and measure. In this particular case, how would GEICO be able to recoup, uh, you know, the- you know, the- the unwinding of these kinds of arbitration decisions? Uh, I don't see any mechanism by which GEICO could be able to do that. And again, I think that's one of the reasons why so many of the district courts have found that this can constitute irreparable harm. They weren't all wrong. They're the people on the ground looking at this issue, you know, through the microscope, so to speak, and they've reached these conclusions. And I think, frankly, they were following this court's, uh, you know, decisions to the effect where, you know, an arbitration award, uh, where it might not be enforceable or where there's a reasonable probability it won't be enforceable, courts have, uh, not hesitated. This court has not hesitated to enjoin those kinds of, uh, arbitrations. Uh, and we just would say that the same thing would certainly be appropriate here, especially where, you know, uh, the arbitrations really are, you know, are not an appropriate forum, uh, to, uh, address these kinds of, uh, pattern-based fraud issues. Thank you. Uh, we'll hear rebuttal. Thank you, Your Honor. Um, I'd like to respond to Judge Livingston's question and particularly to say that there was a joint motion to dismiss that was also part of the original underlying motions in the district court. And that motion was granted the presumption that the allegations were true. And that was only based because it was a motion to dismiss. That presumption does not apply on the motion for a preliminary injunction. There is no assumption that the conclusionary allegations in the unverified complaint are true. And so I think there's a very dearth of evidence presented to, uh, to hold up this injunction. With regard to reimbursement, the expert report that we submitted concluded very distinctly at page, um, 170 of the record that, as with any practice, there's room for debate in specific instances. However, defendants demonstrate a solid understanding of the care their patients need and provide such care as appropriate. That statement from a medical expert went unrebutted. That's the only evidence in the record as to whether or not the practice is acting appropriately. And I would say that, um, the issue here is clearly whether or not, and I think Judge Park landed on this directly, whether or not the harm is irreparable. And the idea that GEICO cannot claw back the money, and they're almost leaning towards an insolvency argument, there's nothing in the record that would establish that. Judge, or, uh, Dr. Strutt has been practicing since 2012 with GEICO on his heels. He's still around. He's going to be around. There's no evidence in record that they won't be able to collect. And with regard to the damages, GEICO has created, which we've referred to in our papers as a RICO trap, because they're seeking trouble damages if they're successful in their fraud action. So I'm not so sure that they're going to be left out in the cold. If they're successful on their allegations, again, we, we deny them, but if they're successful, they will be, their harm will not be irreparable. Thank you, Mr. Knorr. We'll take the matter under advisement. Uh, nicely, nicely argued by both sides. Very helpful. Thank you.